UNITED STATES, Appellee

v

WILLIE L. CLAYBORNE, JR. Specialist Four, U. S. Army,
Appellant

No. 26,652

June 29, 1973

*Captain John Howard Shows* argued the cause for Appellant, Accused. With him on the brief were *Colonel Arnold I. Melnick, Captain Michael A. Mason,* and *Captain Howard M. Schmeltzer.*

*Captain Raymond Michael Ripple* argued the cause for Appellee, United States. With him on the brief were *Lieutenant Colonel Ronald M. Holdaway, Major Thomas P. Burns, III, Captain Glenn R. Bonard,* and *Captain Richard L. Menson.*

## OPINION OF THE COURT

DARDEN, Chief Judge:

The question presented for our determination is whether the United States Army Court of Military Review was correct in determining that the use of an improperly obtained pretrial statement was to be tested for specific prejudice contrary to our holding in United States v Kaiser, 19 USCMA 104, 41 CMR 104 (1969). As, in our view, the statement was admissible in evidence, we need not reconsider the principle of general prejudice applied in *Kaiser.*

The accused's activities on the night of September 20, 1970, at Camp Radcliff, Vietnam, led to the death of two soldiers and the wounding of a third. He was convicted of unpremeditated murder, aggravated assault, and communicating a threat.

On September 22, the accused's commanding officer, Captain Howard E. Ferguson, visited him in confinement at the Military Police station. Captain Fergu-

son was accompanied by Captain Dolan, the accused's defense counsel. Ferguson advised the accused of his rights under Article 31, Uniform Code of Military Justice, 10 USC § 831. In addition, Captain Ferguson informed him that he was entitled to the services of civilian or appointed counsel; that he was entitled to request a particular military counsel; that he was entitled to have counsel present at the interview; and that he might stop the conversation at any time. Captain Dolan and Captain Ferguson both talked with the accused, who replied that he remembered nothing about the events surrounding the homicides.

Several days later, Captain Ferguson visited the accused at Long Binh Stockade for the purpose of reading the charges to him. On this occasion, he again advised him of his rights under Article 31 and that he was entitled to the services of civilian counsel, detailed military counsel, or personal military counsel; that any of these could be present, that he did not have to say anything; and that he could stop the conversation any time he wished. The accused stated that no counsel was required. He appeared to be in good condition, and Captain Ferguson made him no promises, nor did he threaten him.

Captain Ferguson then read the charges to the accused and asked if he understood them. Accused replied that he did, and then said, "But . . . it says I killed Sergeant Pena." Ferguson rejoined, "Well, that's what you're accused of doing." He then reminded the accused, "You don't have to say anything to me about that night."

According to Captain Ferguson, the accused replied, "I want to get all this clear in my mind" because, since the prior interview at which his lawyer had been present, "Certain things come back in my mind." The accused then made the incriminating admissions that are in issue here.

Conceding that the accused was advised of his right to counsel and to have counsel present at the interview, the Court of Military Review found the warning deficient in that the accused was not also advised of his right to consult with counsel. This, said the Court, was "separate, complementary, and equally fundamental" to the right to have counsel present. We view this point differently.

The requirements of a warning covering the right to counsel were first prescribed in Miranda v Arizona, 384 US 436 (1966). At the one point at which the Supreme Court set out the exact requirements for the warning, it said, at 444:

Prior to any questioning, the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, *and that he has a right to the presence of an attorney, either retained or appointed.* (Emphasis supplied.)

Elsewhere in its opinion, the Court also declared:

He must be warned prior to any questioning that he has the right to remain silent, that anything he says can be used against him in a court of law, *that he has the right to the presence of an attorney,* and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires. (Emphasis supplied.)

*Id.* at 479.

The Court also referred to the need for an accused to be "clearly informed that he has the right to consult with a lawyer and to have the lawyer with him during interrogation." *Id.* at 471. Considering this language in context, however, we believe the Supreme Court intended it to be nothing more than another way of stating the requirement that the accused be informed he was entitled to the presence of an attorney.

█ This is the interpretation of *Miranda* that this Court adopted in United States v Tempia, 16 USCMA 629, 37 CMR 249 (1967). Notably, the Court commented adversely in that case on Tempia's being "only warned by the agents that he was entitled to consult with counsel." *Id.* at 637, 37 CMR at 257. We believe that advice to an accused that he is entitled to the presence of counsel fairly implies that in addition to the

presence of the counsel the accused has the right to consult him. The right to the presence of counsel was the one deemed "indispensable to the protection of the Fifth Amendment privilege" by the Supreme Court in order to mitigate the danger of a statement's untrustworthiness and to eliminate coercive practices. Miranda v Arizona, supra. We conclude that the Court of Military Review erred in holding that the accused's warning of a right to consult with counsel was an indispensable requirement separate and distinct from his right to the presence of counsel.

In reaching this conclusion, we have not overlooked that the Manual for Courts-Martial, United States, 1969 (Rev. ed.), paragraph 140$a$(2), in setting forth the required warning, states that the accused must be advised "of his right to consult, and to have with him at the interrogation" retained or appointed counsel. As noted above, this language paraphrases the *Miranda* requirement of a warning of the right to have counsel present. It was intended to adopt the "result of the decision in *Miranda.*" Department of the Army Pamphlet No. 27-2, Analysis of Contents, Manual for Courts-Martial, United States, 1969, Revised Edition, at 27-8. Nothing in the Manual's language or in its background analysis indicates that the drafters intended to impose warning requirements beyond those stated in *Miranda* and adopted by this Court in *Tempia.*

■ The Court of Military Review also found that the accused did not freely, knowingly, and intelligently waive his right to counsel. We find no evidence to support that conclusion. United States v Bunting, 6 USCMA 170, 19 CMR 296 (1955). Captain Ferguson testified that he visited the accused for the sole purpose of reading the charges to him. He fully advised him of his rights under Article 31 and to the presence of an attorney, retained or appointed. Despite his having previously been furnished with the services of Captain Dolan, the accused replied that he did not want a lawyer present. He personally initiated the conversation that led to the admissions and stated he wished "to get all this clear in my mind." The proof thus demonstrates that he was not one who unknowingly forfeited his right to the presence of counsel, but that he was fully aware of his right to have counsel present and deliberately chose to unburden himself to Captain Ferguson. While waiver of fundamental rights is not lightly to be presumed, the accused's knowledgeable rejection of the attorney's presence and voluntary election to speak is fully established on this record. *Cf.* Little v United States, 417 F2d 912 (9th Cir. 1969); Lamb v Peyton, 273 F Supp. 242 (W.D. Va. 1967).

The decision of the U. S. Army Court of Military Review is affirmed.

Judges QUINN and DUNCAN concur.